Cheryl COLEMAN and Gerry Coleman, Plaintiffs,

v.

AMERICAN RED CROSS; American Red Cross Blood Services—Southeastern Michigan Region, Defendants.

No. 89–CV–71671–DT.

United States District Court, E.D. Michigan, S.D.

April 4, 1990.

Jonas Sniokaitis, Detroit, Mich., for plaintiffs.

Daniel G. Wyllie, Gregory M. Meihn, Dykema Gossett, Detroit, Mich. (Bruce M. Chadwick, Brendan Collins, Kumiki Gibson, Karen Shoos Lipton, Associate Gen. Counsel, Washington, D.C. of counsel), for American Red Cross and American Red Cross Blood Services—Southeastern Michigan Region.

ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND GRANTING DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

HACKETT, District Judge.

I.

Plaintiff Cheryl Coleman alleges becoming infected with the human immunodeficiency virus (HIV), the accepted cause of Acquired Immune Deficiency Syndrome (AIDS), as the result of a transfusion of blood donated to defendants. Her spouse has joined in the suit. Defendants operate a blood program which currently collects about fifty percent of the nation's volunteer blood supply. All blood collected by defendants is from volunteer donors.

At the time of the donation at issue, information was available to the blood supply community about the virus and the groups identified as being at high risk for the virus, as well as recommended donor screening procedures. There was not in existence at that time, however, a blood test which would detect the presence of HIV infection. After being notified by defendants of a possible problem with the blood used in her transfusion, plaintiff Cheryl Coleman tested positive for HIV infection. Defendants had become aware of this particular problem following a subsequent blood donation by the donor whose blood was used in plaintiff's transfusion. The subsequent donation tested positive for the HIV virus, causing defendants to initiate their "look-back" procedure. Defendants contacted the donor for additional information and determined that the donor carried the HIV virus. Defendants traced the blood from the donor's previous donations in order to alert the recipients of any infected blood.

Plaintiffs served defendants with interrogatories requesting that the donor be identified. Defendants refused to identify the donor. Plaintiffs then brought this motion to compel discovery and defendants brought a cross-motion for a protective order.

Plaintiffs assert that questioning the donor is necessary in order to determine whether defendants carried out their own screening procedures; whether defendants' screening procedures were adequate; and whether surrogate testing, testing for other factors often associated with HIV infection, would have produced results warranting a deferral of the donor. Plaintiffs assert that without disclosure of the donor's identity, it will be impossible to prove defendants' negligence and proximate cause. Plaintiffs further argue that expert testimony regarding alternative screening cannot conclusively establish causation. The expert cannot testify that the donor would have responded to different screening in a manner which would have resulted in his blood being excluded. Plaintiffs assert that only the donor can answer that question. Plaintiffs also wish to question the donor concerning what information the donor did in fact give defendants. Plaintiffs assert that the donor history cards, which defendants have provided to plaintiffs with the donor's identifying information redacted, are inconsistent with each other as to the age of the donor and the date of the donor's last donation. Plaintiffs assert that if this data is inconsistent, the health screening portion at the bottom of the card may contain hidden inconsistencies which

only the donor can identify. Plaintiffs also wish to question the donor about his membership in any group identified as being at high risk for AIDS. Plaintiffs indicate that it is not their intention to sue the donor personally.

Defendants assert that plaintiffs have no need to discover the donor's identity because defendants have all the testing and screening information and will provide it to plaintiffs with the donor's name and identifying data redacted. Defendants assert that there are no discrepancies between the donor history cards of this donor. Age and approximate date of the last donation are not reviewed with the donor by defendants' screening employees as they are not relevant to the health screening. Consequently, inconsistencies in these entries are not reviewed or resolved. Defendants assert that the bottom screening portion of the donor history card for the donation at issue is consistent with the cards from his prior and subsequent donations. Defendants also state that the records of their "lookback" interview with the donor following the HIV positive donation show that, when directly questioned, the donor denied being a member of a group identified as being at high risk for AIDS.

Defendants contend that disclosure of the identities of blood donors could compromise the adequacy and safety of the nation's volunteer blood supply because current and prospective donors will be fearful of becoming embroiled in litigation, of having confidential medical records disclosed and of having their personal and sexual lives subjected to scrutiny. The effect of this would be that donors would be discouraged from donating blood. Defendants assert that the already existing shortage of volunteer donors has caused it to resort to using imported blood and that additional shortages caused by fear of disclosure of donors' identities could severely impair the volunteer blood supply.

Defendants also argue that disclosure would seriously harm the donor because having AIDS, regarded as the "modern day leprosy," can result in discrimination in jobs, housing and health care if that information is made public. Defendants also assert that the donor's constitutional right to privacy will be violated if the court orders disclosure of his identity.

## II.

Federal Rule of Civil Procedure 26(b)(1) allows discovery of any matter not privileged that is relevant to the subject matter of the action. The rules also provide that discovery may be limited where there is good cause to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. Fed.R. Civ.P. 26(c). The issue presented in this case is whether the plaintiffs' need for this disclosure outweighs the potential danger to the volunteer blood supply system. Because this court determines that the potential danger to the volunteer blood supply system outweighs the plaintiffs' discovery needs, it will not address the issue of whether the plaintiffs' discovery needs outweigh the potential impact on the donor or violate any constitutional rights of the donor.

There is no question that court ordered disclosure of donor's identities will have a serious impact on volunteer blood donations. The number of volunteer blood donors has been reduced in the last several years as a result of confusion over how AIDS is transmitted and whether AIDS can be contracted by donating blood. The exclusion of persons who are members of groups identified as being at high risk for AIDS, whether or not those persons carry the HIV virus, has further reduced the available pool of blood donors. The specter of becoming involved in litigation, whether as a party or a witness, along with the potential for probing questions concerning a person's private life would certainly serve to dampen any charitable disposition toward donating blood.

Plaintiffs argue that although the quantity of blood from volunteer donors might be reduced if donors' identities were disclosed, the potential for this disclosure would serve to make the blood supply safer. Plaintiffs point out that persons who are aware they are at risk for AIDS contin-

ue to donate blood and that the possibility of having their identities disclosed in future litigation would discourage these high-risk donors from giving blood. Defendants argue that the disclosure of donors' identities would actually decrease the safety, as well as the adequacy, of the volunteer blood supply because those donors who continue to donate would be less willing to provide accurate health information if they feared that the information might be disclosed. *See, Doe v. American Red Cross Blood Services,* 125 F.R.D. 646 (D.S.C.1989). Defendants also argue that disclosure would impair the effectiveness of their "look-back" investigation by making a potentially HIV-positive donor less willing to cooperate because of fear of disclosure. This would impair defendants' ability to determine whether any potentially infected blood was used for transfusion, and prevent or delay notification to recipients of this blood, which might help prevent the spread of AIDS.

The reduction in the number of volunteer blood donors would clearly compromise the safety, as well as the adequacy, of the nation's blood supply. One of the factors prompting the Department of Health, Education and Welfare to develop a national blood policy encouraging volunteer donations is that volunteer blood donations were determined to be safer than donations which are commercial in nature. 39 Fed. Reg. 32702 (September 10, 1974). Certainly, a lack of candor on the part of potential blood donors, caused by fear of disclosure of their identities, would affect this safety. This court finds that disclosure of the identities of volunteer blood donors for the purposes of litigation could compromise both the adequacy and safety of the nation's blood supply.

Plaintiffs argue that defendants, in arguing society's interest, are actually attempting to immunize themselves and to minimize their liability. Defendants correctly point out that discovery of the donor might also be helpful to their case. Defendants, however, believe that the need for donor confidentiality outweighs their own interests in the litigation as well.

Plaintiffs' discovery needs are outweighed by the societal interest in an adequate and safe blood supply. Plaintiffs have failed to demonstrate either a compelling need for this information or any special circumstances militating in favor of disclosure of the donor's identity. Plaintiffs'. claims for negligence will not be totally compromised without the identity of the donor. At the time of the "look-back" interview, the donor denied being a member of an identified high-risk group. Requestioning would serve no purpose. Defendants will provide all of the information they possess concerning the donor after redacting the donor's name, address and any non-relevant information which would serve to identify the donor. Accordingly,

IT IS ORDERED that plaintiffs' motion to compel discovery is denied.

IT IS FURTHER ORDERED that defendants will not disclose the donor's identity and no further discovery by either party will be taken from this donor. All information defendants have concerning the donor's testing and screening will be provided to plaintiffs with the donor's name and identifying data redacted.