**Cheryl COLEMAN; Gerry Coleman, Plaintiffs–Appellants,**

v.

**AMERICAN RED CROSS; American Red Cross Blood Services–Southeastern Michigan Region, Defendants–Appellees,**

**Paul Lentz, M.D.; Thomas J. Schnitzer, M.D., Defendants.**

No. 91–2085.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 4, 1992.

Decided Aug. 26, 1992.*

---

* This decision was originally issued as an "unpublished decision" filed on August 26, 1992. On November 9, 1992, the court designated the opinion as one recommended for full-text publication.

Patrick J. Burkett (argued and briefed), Sommers, Schwartz, Silver & Schwartz, Southfield, Mich., Jonas Sniokaitis, Fried & Sniokaitis, Detroit, Mich., for plaintiffs-appellants.

Daniel G. Wyllie (argued), Kathleen McCree Lewis, Darleen Darnall (briefed), Dykema & Gossett, Detroit, Mich., Brendan Collins, David Wollin, Bruce M. Chadwick, Arnold & Porter, Washington, D.C., for defendants-appellees.

Before: GUY and RYAN, Circuit Judges; and CONTIE, Senior Circuit Judge.

**1.** Shortly after testing the blood, a nurse from the Red Cross interviewed the donor. The donor denied being a member of any high-risk category, but the interviewing nurse concluded from his demeanor that he was not being truthful.

**2.** The first amended complaint invokes federal jurisdiction through the act that incorporated

PER CURIAM.

The plaintiffs, one of whom was infected with the HIV virus during a blood transfusion, brought this action against the American Red Cross, alleging that the Red Cross negligently accepted blood from an infected donor. After the plaintiffs' counsel violated a protective order by investigating and learning the identity of the blood donor, the district court enjoined the plaintiffs from using the identity to bring a separate action against the donor. We reverse the injunction.

I.

Cheryl Coleman received a blood transfusion at the University of Michigan Hospital on August 15, 1984. The blood Mrs. Coleman received had been donated to the American Red Cross six days earlier. That blood apparently contained the Human Immunodeficiency Virus (HIV), the virus that causes Acquired Immune Deficiency Syndrome (AIDS).

A laboratory test for HIV-infected blood was not developed until March 1985. When the donor of the blood that infected Mrs. Coleman attempted to donate again in April 1985, the test revealed that he was infected.[1] After tracing the donor's previous donations, the Red Cross eventually notified Mrs. Coleman. Her blood tested positive for HIV antibodies in September 1988.

Mrs. Coleman and her husband, Gerry, filed this action in a Michigan state court in March 1989. The Red Cross removed the case to the federal district court two months later.[2] The complaint alleges that the Red Cross was negligent in failing to screen out the infected donor and in failing to test his blood after collecting it.

During discovery, the Colemans requested the donor's name and address. After

the American Red Cross. 36 U.S.C. § 2. The Supreme Court, resolving a split among the circuits, recently concluded that this act does provide original federal jurisdiction for all cases in which the Red Cross is a party. *American Nat'l Red Cross v. S.G.,* —— U.S. ——, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992).

the Red Cross refused to comply with the request, the Colemans filed a motion to compel, arguing that they needed to question the donor to establish that the Red Cross was negligent in accepting and using his blood. The Colemans indicated at that time that they did not intend to bring an action against the donor.

While the motion to compel was pending, the parties entered into a stipulation in which they agreed to restrict access to any confidential information that would be disclosed during discovery. The Red Cross then responded to the motion to compel by moving for an order to protect the donor's identity.

In April 1990, the district court denied the Colemans' motion to compel and granted the Red Cross's motion for a protective order. *Coleman v. American Red Cross*, 130 F.R.D. 360 (E.D.Mich.1990). The court ordered both parties to refrain from taking any discovery from the donor and ordered the Red Cross to provide the donor's records to the Colemans with all identifying information redacted. *Id.* at 363.

The Red Cross provided the donor's information cards to the Colemans. Those cards revealed that the donor frequently gave inconsistent information in response to the screening questions. In particular, the cards contain inconsistent information concerning the donor's age, date of birth, and number of previous donations. It also appears from the cards that on some occasions the donor falsely stated that he had not been exposed to hepatitis and that he had not donated or sold blood plasma.

In January 1991, the Red Cross delivered several more donor information cards to the Colemans. On one of the cards, the Red Cross inadvertently failed to redact the donor's social security number. The Colemans' attorney immediately hired a private investigator, who used credit records to determine the donor's name and address.

A few days later, the Colemans' attorney informed counsel for the Red Cross that he knew the identity of the donor. The Red Cross immediately moved for a new protective order to prevent the Colemans and their attorney from using this information.

In March 1991, the district court issued a new protective order. The court found that the Colemans' attorney had violated the original protective order by using the social security number to identify the donor. The court ordered the Colemans and their attorney to turn over any documents containing the donor's name and enjoined them from using the information for any purpose, including using the name to bring an action against the donor.

The Colemans appealed from the March 1991 protective order, arguing that the district court erred by enjoining them from suing the donor. The Red Cross moved to dismiss the interlocutory appeal for lack of jurisdiction. In August 1991, we dismissed the appeal, observing:

> Given the information currently before this court, it does not appear that the district court may properly enjoin the defendants [sic] from commencing suit against the donor. However, the court also notes that the plaintiffs have not moved the district court for leave to do so.

*Coleman v. American Red Cross*, No. 91–1421, slip op. at 2 (6th Cir. Aug. 12, 1991).

The Colemans immediately asked the district court to modify the March 1991 protective order to permit them to use the donor's identity to commence suit against him. In September 1991, the court issued a new order which explicitly barred the Colemans from using the name to sue the donor or for any other purpose.

This second appeal followed. The Red Cross again moved to dismiss the appeal for lack of jurisdiction. In December 1991, we held that we have jurisdiction to hear this interlocutory appeal because the injunction against suing the donor was a collateral order. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

## II.

We must first decide which of the district court's orders are before us on appeal. The Colemans devote much of their argument to attacking the district court's deter-

mination that the need to safeguard the nation's blood supply and the privacy of the donor outweighs the Colemans' interest in obtaining discovery from the donor. The Red Cross argues that this determination, which was the basis of the April 1990 protective order, 130 F.R.D. 360 (E.D.Mich.), is not properly before us.

The Red Cross correctly points out that the Colemans are appealing the March 1991 order and the September 1991 refusal to modify that order. However, the district court issued the March 1991 and September 1991 orders in response to the Colemans' violation of the April 1990 protective order.

The Red Cross maintains that our review is limited to determining whether the March 1991 and September 1991 orders were appropriate responses to the Colemans' violation of the earlier order. Therefore, the Red Cross argues that we may not review the validity of the April 1990 order.

The Red Cross further contends that the Colemans are foreclosed from challenging the April 1990 order because they failed to appeal from that order when it was issued. The Red Cross argues that allowing the Colemans to challenge that order now would encourage litigants to violate discovery orders.

█ We have held repeatedly that orders denying or granting discovery are not appealable under the collateral order doctrine. *Federal Deposit Ins. Corp. v. Ernst & Whinney,* 921 F.2d 83, 85 (6th Cir.1990); *Dow Chem. Co. v. Taylor,* 519 F.2d 352, 354–55 (6th Cir.), *cert. denied,* 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975). Therefore, contrary to the Red Cross's assertion, the Colemans could not have appealed the April 1990 protective order at the time it was issued.

█ A litigant faced with an adverse discovery order may obtain review, however, by violating the order and incurring sanctions or a contempt citation. *Taylor,* 519 F.2d at 355; *see also, Butcher v. Bailey,* 753 F.2d 465, 471 (6th Cir.), *cert. dismissed,* 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985). As we explained in *Taylor,* "[s]hould [a party] refuse to obey the order and sanctions are applied, review of the order may be obtained." 519 F.2d at 355.

The district court found that the Colemans violated the April 1990 order by seeking and learning the donor's name. The Colemans do not deny that they violated the order. As a sanction, the district court barred the Colemans from using the name to sue the donor. By violating the April 1990 order and incurring sanctions, the Colemans have placed that order before us for review.

### III.

Having found that the April 1990 protective order is properly before us, we now consider the substantive questions raised in this appeal. We must first determine whether the district court erred by issuing a protective order designed to prevent the Colemans from learning the donor's identity. If that protective order was proper, we must then decide whether the March 1991 and September 1991 orders were appropriate responses to the Colemans' violation of the earlier order.

### A.

█ The district court issued the April 1990 protective order pursuant to Fed. R.Civ.P. 26(c), which permits a court to enter a protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." We review for abuse of discretion a district court's decision to issue a protective order. *Lewelling v. Farmers Ins. of Columbus, Inc.,* 879 F.2d 212, 218 (6th Cir.1989).

The district court found that the disclosure of the donor's identity would threaten the adequacy and safety of the nation's blood supply and that this threat outweighed the Colemans' need to obtain discovery directly from the donor. The Red Cross argues on appeal that disclosure also would violate the donor's right to privacy.

The Colemans attack the finding that disclosure could harm the national blood

supply. They insist that their interests in obtaining discovery from the donor and bringing an action against him outweigh any harm that might result from disclosure.

The Red Cross submitted an affidavit to the district court from Dr. A. William Shafer, Executive Director of the Red Cross's Regional Blood Services for Southeast Michigan. Dr. Shafer stated that, in his opinion, donor confidentiality was essential to the maintenance of an adequate blood supply. The Red Cross also cited the testimony of a former commissioner of the Food and Drug Administration for that proposition.

The Colemans argue that the national blood supply would be safer if high-risk persons were discouraged from donating by the possibility of disclosure. The Red Cross counters that disclosure would make the blood supply less safe. Dr. Shafer explained that donors would not be candid during pre-donation interviews if they knew their identities could be disclosed. Therefore, Dr. Shafer opined that pre-donation screening would become less effective and more high-risk blood would be donated.

We find that the district court did not commit clear error in concluding that donor disclosure could imperil the safety and adequacy of the national blood supply. We note that the Colemans submitted no affidavits or other evidence to the contrary.

The district court then concluded that the danger to the national blood supply outweighed the Colemans' need to obtain discovery from the donor. The Colemans attack that determination.

At least six other district courts and state courts from at least nine states have published opinions in which they have performed the same balancing test. Most of those courts reached the same conclusion as the district court and refused to order the disclosure of the donors' names.[3] Some of those courts allowed the plaintiffs to depose the donors indirectly or through written questions.[4]

A minority of courts concluded that the plaintiffs' interest in discovering the donors' names outweighed the other interests and allowed the plaintiffs to learn the donors' names.[5] Those courts typically imposed protective orders to prevent the plaintiffs from making the names public.[6]

The disclosure or non-disclosure of a blood donor's identity is obviously an issue of great importance to both the public and to the litigants. Although there are compelling arguments for each side, we cannot conclude that the district court abused its discretion in finding that the interests asserted by the Red Cross outweigh the Colemans' interest in obtaining discovery from the donor. We therefore affirm the validity of the April 1990 protective order.

### B.

■■■■ Having concluded that the order barring the Colemans from obtaining discovery from the donor is proper, we now consider whether the March 1991 and September 1991 orders are appropriate responses to the Colemans' violations of the

---

**3.** See Borzillieri v. American Nat'l Red Cross, 139 F.R.D. 284 (W.D.N.Y.1991); Bradway v. American Nat'l Red Cross, 132 F.R.D. 78 (N.D.Ga. 1990); Boutte v. Blood Systems, Inc., 127 F.R.D. 122 (W.D.La.1989); Doe v. American Red Cross, 125 F.R.D. 646 (D.S.C.1989); Belle Bonfils Memorial Blood Ctr. v. District Court, 763 P.2d 1003 (Colo.1988); Rasmussen v. South Florida Blood Serv., 500 So.2d 533 (Fla.1987); Snyder v. Mekhjian, 244 N.J.Super. 281, 582 A.2d 307 (1990), aff'd, 125 N.J. 328, 593 A.2d 318 (1991); Krygier v. Airweld, Inc., 137 Misc.2d 306, 520 N.Y.S.2d 475 (Sup.Ct.1987); Doe v. University of Cincinnati, 42 Ohio App.3d 227, 538 N.E.2d 419 (1988); Stenger v. Lehigh Valley Hosp. Ctr., 386 Pa.Super. 574, 563 A.2d 531 (1989), aff'd, 609 A.2d 796 (Pa.1992).

**4.** See, e.g., Boutte, 127 F.R.D. at 126; Belle Bonfils, 763 P.2d at 1014; Stenger, 563 A.2d at 539.

**5.** See Sampson v. American Nat'l Red Cross, 139 F.R.D. 95 (N.D.Tex.1991); Mason v. Regional Medical Ctr., 121 F.R.D. 300 (W.D.Ky.1988); Most v. Tulane Medical Ctr., 576 So.2d 1387 (La.1991); Tarrant County Hosp. Dist. v. Hughes, 734 S.W.2d 675 (Tex.Ct.App.1987); Doe v. Puget Sound Blood Ctr., 117 Wash.2d 772, 819 P.2d 370 (1991).

**6.** See, e.g., Sampson, 139 F.R.D. at 100; Mason, 121 F.R.D. at 303–04; Puget Sound, 819 P.2d at 372.

protective order. Since the district court has broad discretion to enforce its discovery orders, we review sanctions for abuse of discretion. *Lewelling,* 879 F.2d at 218.

The donor's donation cards and other information supplied to the Colemans during discovery revealed that the donor regularly supplied the Red Cross with inconsistent information when giving blood. He provided several different birthdays, claimed to be a variety of ages, and gave highly inconsistent information concerning the frequency of his previous blood donations. It also appears that on at least some occasions he inaccurately stated that he had not donated or sold blood plasma and that he had not been exposed to hepatitis.[7]

Initially, the Colemans sought the donor's name so that they could depose him in order to establish that the Red Cross had screened donors negligently. By the time the Colemans obtained the donor's name in January 1991, the inconsistent and inaccurate donor information had led them to conclude that they had a separate cause of action against the donor.

The district court's March 1991 and September 1991 orders have foreclosed that separate cause of action against the donor because the Colemans obtained the donor's name in violation of the April 1990 protective order. The question we must decide, then, is whether the district court properly may enjoin a party from using a name obtained in violation of a discovery order to pursue a separate cause of action.

We begin by stating a proposition that is not in serious dispute. Since we have upheld the validity of the April 1990 protective order, there is no question that the district court could enjoin the Colemans from making any use of the donor's name in their action against the Red Cross. The question we face is whether the district court may enjoin them from making use of the name in a *separate* action against the donor.

Of the numerous published opinions which have considered the discovery of a blood donor's identity, only *Doe v. Puget*

*Sound Blood Center,* 117 Wash.2d 772, 819 P.2d 370 (1991), involved a donor who was a potential defendant as well as a potential witness against the blood collector. In *Puget Sound,* the Washington Supreme Court upheld a trial court order that required the defendant blood bank to disclose the donor's name to the plaintiff. The order required the plaintiff to keep the donor's identity confidential until and unless the plaintiff joined the donor as a party defendant. *Puget Sound,* 819 P.2d at 372. However, the plaintiff did not join the donor as a defendant, and the court did not consider the plaintiff's need to learn the name of a potential defendant when balancing the competing interests.

The Red Cross cites *Sperry Rand Corp. v. Rothlein,* 288 F.2d 245 (2d Cir.1961), for the proposition that a district court may enforce its protective orders by enjoining a party from using information in other litigation. In *Sperry Rand,* the plaintiff sued several former employees for misappropriating trade secrets. After deposing the defendants under a protective order, the plaintiff filed a related action against another set of defendants in state court. The district court then enjoined the plaintiff from introducing evidence derived from the deposition in the state proceedings.

The Second Circuit affirmed the injunction, concluding that it was justified because the plaintiff would have an unfair advantage in the state proceedings if it immediately could use information gained during federal discovery. *Sperry Rand,* 288 F.2d at 248. However, the court declined to decide whether the rules of civil procedure governing protective orders would justify the injunction. *Id.* at 249.

The injunction issued here goes far beyond that issued in *Sperry Rand.* It bars not only immediate use of the donor's name in other litigation, but all future use as well. The Red Cross has cited to no authority for the proposition that a district court may permanently bar a party from using information it has to bring an action

---

7. If the donor had admitted that he had donated or sold blood plasma or that he had been ex-

posed to hepatitis, the Red Cross apparently would not have accepted his blood donations.

against another person. *Cf. Kramer v. Boeing Co.*, 134 F.R.D. 256, 258 (D.Minn. 1991) (barring plaintiff's *attorney* from using documents obtained in violation of discovery order in separate proceeding against same defendant).

We observe that it does not appear that the Colemans want to bring an action against the donor for vexatious reasons. The evidence produced during discovery raises serious questions about his conduct as a blood donor.

The Red Cross concedes that the district court could not enjoin the Colemans from suing the donor if they had not violated the protective order by obtaining the donor's name from the information provided by the Red Cross. However, the Colemans point out that they could not possibly have learned the donor's name without obtaining the information from the Red Cross. The Red Cross does not deny that the district court's injunction effectively forecloses the Colemans from ever filing suit against the donor.

The donor's privacy interests are substantial, as is the public interest in maintaining a safe and adequate blood supply. However, we believe that the Colemans' right to litigate their claims against the donor substantially outweighs the competing interests, especially since there is significant evidence to suggest that the donor's conduct was suspect. Accordingly, we conclude that the district court abused its discretion by enjoining the Colemans from bringing a separate action against the donor.

We reject the Red Cross's argument that our holding will encourage future litigants to violate protective orders to obtain the names of blood donors. When a party violates a protective order, a district court may impose appropriate sanctions to remedy the violation. Thus, a district court may bar a violating party from using the information in the proceeding and may impose other sanctions, such as contempt citations. In some cases, even a default judgment may be appropriate.

In some, perhaps most, circumstances, a district court also may properly enjoin a party from using the fruits of a discovery violation in another proceeding. Our holding that the district court abused its discretion by denying the Colemans the use of the donor's name in a separate proceeding is limited to the unique facts presented here. Specifically, we reach that result because the injunction effectively forecloses the Colemans from ever bringing an action against the donor and because the Colemans have presented evidence to suggest that such an action would not be frivolous.

We AFFIRM the district court's April 1990 protective order. We REVERSE the March 1991 and September 1991 orders insofar as they enjoin the Colemans from using the donor's name to bring a separate cause of action against him. We REMAND to the district court for further proceedings.