Cheryl **COLEMAN** and Gerry Coleman, Plaintiffs,

v.

**AMERICAN RED CROSS, American Red Cross Blood Services–Southeastern Michigan Region, Defendants.**

No. 89–CV–71671–DT.

United States District Court, E.D. Michigan, S.D.

Jan. 5, 1993.

Jonas Sniokaitis, Detroit, MI, for plaintiffs.

Daniel G. Wyllie, Dykema, Gossett, Detroit, MI, for defendants.

## ORDER DISMISSING COMPLAINT FOR VIOLATION OF PROTECTIVE ORDER

HACKETT, District Judge.

The narrow issue before this court is the appropriate disposition of defendants' pend-

ing motion to dismiss based upon plaintiffs' admitted violation of this court's protective order agreed upon by the parties in this case. Plaintiffs' complaint alleges that Cheryl Coleman became infected with the human immunodeficiency virus (HIV) as a result of a contaminated blood transfusion she received due to the negligence of the American Red Cross in conducting its volunteer blood donor program. In April, 1990, this court issued a protective order allowing certain discovery relative to the implicated donor, which order specifically restricted plaintiffs' access to the donor's identity. The court's reasons for doing so were carefully detailed on the record. The court relied on plaintiffs' unequivocal statement on the record that they had no intention of either identifying or suing the donor.

After identification information was inadvertently provided during the discovery process plaintiffs deliberately violated the protective order by immediately hiring a private investigator to discover the donor's name. The court subsequently imposed sanctions for this violation which prohibited plaintiffs from using any information obtained in violation of the discovery order to sue the blood donor.

Upon appeal of the sanctions by plaintiffs, the Court of Appeals for the Sixth Circuit affirmed this court's April, 1990, protective order. However, the Court reversed and remanded the March, 1991, and September, 1991, orders insofar as they enjoined plaintiffs from using the donor's name to sue said donor individually, finding that plaintiffs had set forth facts which indicated that they may be able to state a case against the donor. Defendants have now filed a motion for dismissal (as a sanction) based upon plaintiffs' and counsel's deliberate violation of the April, 1990, protective order.

## FACTS

The factual background in this matter is detailed in *Coleman v. American Red Cross*, 979 F.2d 1135 (6th Cir.1992); and, *Coleman v. Red Cross*, 130 F.R.D. 360–62 (E.D.Mich.1990). The facts pertinent to the

disposition of this motion are not in dispute. In the course of discovery, the court issued a protective order which facilitated plaintiffs' access to information regarding screening questions and answers given by the implicated blood donor while protecting the donor's identity. *See Coleman*, 130 F.R.D. at 363. In determining sanctions appropriate for violation of the protective order, this court has contemplated the importance and purpose of protective orders in facilitating litigation and promoting the integrity of our judicial system.

### A. The Purpose of Protective Orders and the Effect of Violations.

Federal Rule of Civil Procedure 26(b) provides for nearly unlimited discovery of any non-privileged material relevant to a pending matter. The trial court is granted discretion to issue protective orders pursuant to Fed.R.Civ.P. 26(c) to protect parties and witnesses. The combination of parts (b) and (c) of Rule 26 "permit the broadest scope of discovery and leave it to the enlightened discretion of the district court to decide what restrictions may be necessary in a particular case." 8 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2036 (1970). The court is authorized to enter Rule 37(b) sanctions when a protective order under Rule 26(c) is breached. *See* Gregory P. Joseph, Sanctions, The Federal Law of Litigation Abuse, § 47(A)(3) (1989) (citations omitted).

The nature of the violation of a protective order was discussed in *Falstaff Brewing Corp. v. Philip Morris Inc.*, 89 F.R.D. 133 (N.D.Cal.1981) *aff'd in part, rev'd in part*, 702 F.2d 770 (9th Cir.1983). In *Falstaff*, plaintiffs violated a protective order by failing to return confidential documents to defendants after voluntarily dismissing the case. The court stated:

The Court considers this an extremely serious matter. Not only does it jeopardize the confidentiality of sensitive commercial and financial information obtained by plaintiffs from Miller Brewing Company's general ledger, accounts, vendor lists, internal forms, and other documents. It calls into question the integri-

ty of the discovery process conducted under protective orders. In thousands of actions throughout the federal court system, millions of documents have been and are being produced in reliance on the binding force of protective orders. Those orders have become a standard feature of most commercial litigation, obviating the need for costly and time-consuming proceedings on discovery objections. As a result, a tendency may have developed to take them for granted and to treat compliance with them cavalierly. An appropriate sanction must therefore be imposed, "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent". *National Hockey League v. Met. Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976). Rule 37(b)(2) authorizes imposition of sanctions, including contempt, for failure to obey orders relating to discovery, including protective orders issued under Rule 26(c).

*Id.* at 135.

In *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796, 107 S.Ct. 2124, 2131, 95 L.Ed.2d 740 (1987), the United States Supreme Court upheld the district court's authority to appoint a special prosecutor to bring a case of criminal contempt against defendants who had disobeyed a court order. The Court explained the federal courts' need to achieve compliance with court orders:

> The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches. "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the judicial power of the

United States' would be a mere mockery." *Gompers v. Bucks Stove and Range Co.*, 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911). As a result, "there could be no more important duty than to render such a decree as would serve to vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience." *Ibid.*

481 U.S. at 796, 107 S.Ct. at 2131–32.

### B. The April, 1990, Protective Order.

The court's April, 1990, order denying plaintiffs' motion to compel disclosure of the donor's identity by the defendants in this case was issued only after weighing whether plaintiffs' need for disclosure of the donor's identity outweighed the potential danger to the volunteer blood supply system.[1] In determining that "[p]laintiffs' discovery needs are outweighed by the societal interest in an adequate blood supply," the court considered plaintiffs' arguments regarding their need to identify and question the donor. The court determined that questioning the donor would not serve sufficient purpose in furthering plaintiffs' proofs on their claim of negligence against the defendants in this case. 130 F.R.D. at 363.

Rather, the court concluded that "disclosure of the identities of volunteer blood donors for the purposes of litigation could compromise both the adequacy and safety of the nation's blood supply." *Id.* Hence, the court ordered "that plaintiffs' motion to compel discovery is denied." The court further ordered "that defendants will not disclose the donor's identity and no further discovery by either party will be taken from this donor. All information defendants have concerning the donor's testing and screening will be provided to plaintiffs with the donor's name and identifying data redacted." *Id.* As previously discussed, this order was affirmed by the Sixth Circuit Court of Appeals.

---

1. In response to plaintiffs' motion to compel, defendants filed a motion for a protective order prohibiting disclosure of the donor's identity. Defendants argued that disclosure would inhibit potential donors from giving blood, thereby threatening the nation's blood supply. *See* 130 F.R.D. at 362–63.

### C. Violation of the Protective Order.

In January, 1991, plaintiffs obtained the donor's social security number when the Red Cross inadvertently produced a donor registration card containing an unredacted social security number. Plaintiffs' counsel immediately hired a private investigator to discover the name and address of the blood donor. The investigator was successful and counsel conveyed the information to plaintiff Cheryl Coleman who, in turn, told her husband the name of the implicated donor. After plaintiffs' counsel informed defense counsel that they had the name of the donor, defendants filed an emergency motion for a protective order.

On March 1, 1991, the court issued a new protective order. The court made findings of fact:

1. Plaintiffs' counsel has engaged in investigation of the donor involved in this case and has obtained the identity of said donor in violation of this court's order denying plaintiffs' motion to compel discovery and granting defendants' motion for a protective order dated April 3, 1990, and in violation of this court's prior protective order of January 19, 1990;

2. Plaintiffs' counsel has disclosed the identity of the donor to plaintiff Cheryl Coleman and to Barbara Jane Willing in violation of this court's orders; and,

3. In view of the foregoing findings, this protective order is necessary and appropriate to discover and remedy the effects of the violation of this court's orders, to protect against further disclosure of the donor's identity and to enforce this court's orders.

The court then ordered plaintiffs, plaintiffs' counsel, and the private investigator to cease and desist from any further investigation of the donor's identity. They were also ordered to turn over any documents which contained the donor's name to defendants' attorney and to refrain from disclosing to any source the information they had obtained.

Further, the court enjoined and restrained plaintiffs "from using the name or names or any other identifying information of the implicated donor or any other investigation of the implicated donor for any purpose whatsoever (including without limitation the prosecution of this action or the commencement and/or prosecution of any other action against any person or entity including the implicated donor) without further order of this Court." On plaintiffs' second appeal of this protective order and a subsequent, September, 1991, order barring the use of the name to sue the donor or for any other purpose, the Sixth Circuit Court of Appeals addressed the parties' arguments regarding the merits of the protective orders issued in this case.[2]

### D. Appeal of the Protective Orders.

The Sixth Circuit's review encompassed the original April, 1990, protective order, in addition to the March, 1991, order issued after violation of the original order, and the September, 1991, denial of the motion to modify. The Court affirmed the April, 1990, order denying plaintiffs' discovery of the donor's name and ordering the production of donor registration cards with the names redacted.[3]

However, the Court of Appeals found that the court's order foreclosing a separate cause of action by plaintiffs against the donor was not permissible. The Court reversed the March, 1991, and September, 1991, orders and remanded to this court for further proceedings.

---

**2.** The Sixth Circuit dismissed plaintiffs' first appeal because plaintiffs had not moved this court to modify the March, 1991, order. Plaintiffs filed a motion requesting the court to modify the March order. This court denied the motion, issuing a new protective order in September, 1991, and plaintiffs appealed it. The Sixth Circuit heard the appeal because the order enjoining plaintiffs from suing the donor was a collateral order. *See Coleman,* 979 F.2d at 1137.

**3.** The Court noted that there were compelling arguments on both sides of the issue of whether to allow disclosure of blood donors' identities during litigation. However, the Court concluded, after noting that most other courts using the same balancing of interests analysis had reached this court's conclusion, that this court had not abused its discretion in protecting the identity of the blood donor. *Coleman,* 979 F.2d at 1138–39.

## SANCTIONS

Several options are available to the court when parties or counsel fail to comply with protective orders. They are: various sanctions pursuant to Fed.R.Civ.P. 37; sanctions pursuant to the court's inherent powers; and, dismissal under Fed.R.Civ.P. 41(b).

### A. Sanctions Against a Party Pursuant to Fed.R.Civ.P. 37.

Federal Rule of Civil Procedure 37 authorizes the court to sanction parties based upon discovery abuse. Rule 37(b)(2)(C) provides:

> Sanctions by Court in Which Action is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> \*     \*     \*     \*     \*     \*
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

In *National Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976), the Court upheld a district court's sanction of dismissal pursuant to Rule 37, based upon the plaintiff's failure to timely answer written interrogatories. The Court found that the lower court had not abused its discretion in finding that the hockey club had exhibited "flagrant bad faith" and its counsel a "callous disregard of its responsibilities." 427 U.S. at 643, 96 S.Ct. at 2781. The Court explained: "But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.*

There are limits to the court's authority to impose sanctions under Rule 37. The power to order a dismissal or the entry of a default judgment is limited by due process protections, because such an order deprives a party of a claim or defense without a hearing. *See Societe Internationale v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958). Consequently, dismissal as a discovery sanction must be due to "willfulness, bad faith, or any [other] fault" on the part of a party. 357 U.S. at 211, 212, 78 S.Ct. at 1095, 1095–96.

In *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir.1988), the Court upheld the dismissal of a RICO and antitrust action that was dismissed for non-cooperation in discovery. The Sixth Circuit noted the district court's "extensive and painstaking examination of the basis for its dismissal." *Id.* at 154. The district court, in *Regional Refuse,* had characterized plaintiff's and counsel's behavior as "outrageous and beyond the realm of which the parties to the action and their counsel should be made to tolerate." *Id.* at 155. In addition to the conduct itself, the appellate court noted that

> [o]ther factors considered relevant in reviewing dismissals under Rule 37(b)(2)(C) [are] ... whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery, ... whether the dismissed party was warned that failure to cooperate could lead to dismissal, ... and whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Id.* (citations omitted). *See also Taylor v. Medtronics, Inc.*, 861 F.2d 980, 986 (6th Cir.1988).

The Court in *Regional Refuse* also reexamined the requirement that dismissal may be imposed only upon a finding of willfulness, bad faith, or fault, stating: "If a

party has the ability to comply with a discovery order and does not, dismissal is not an abuse of discretion." 842 F.2d at 154.

Other opinions in the Sixth Circuit which have upheld dismissals or default judgments under Rule 37 include: *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1082 (6th Cir.1990) (affirming default judgments against several defendants for noncompliance with its discovery orders); and, *Jackson v. Nissan Motor Corp. in U.S.A.*, 121 F.R.D. 311, 323 (M.D.Tenn.1988), *rev'd on other grounds*, 888 F.2d 1391 (6th Cir. 1989) (dismissing an automobile products liability action under Rule 37 when plaintiffs' attorneys permitted an allegedly defective automobile to be scrapped after their own expert's evaluation, following a failure to respond to the defendant's request to inspect the car. The court found the plaintiffs' attorneys' conduct grossly negligent and, because other sanctions were untenable, the case was dismissed).

### B. Sanctions Pursuant to the Court's Inherent Powers.

■ The court has inherent powers to assess attorney fees as a contempt sanction for the bad faith actions of attorneys and litigants. The foremost case on these powers is *Chambers v. Nasco, Inc.*, —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In *Chambers*, the defendant ignored the district court's several orders and injunctions to keep his property, which was the subject of the lawsuit for specific performance of a purchase agreement, in a status quo position until disposition of the case. Further, he delayed the lawsuit by attempting to move the property records to another state in an effort to deprive the court of diversity jurisdiction. He also tried to render the purchase agreement meaningless by seeking to encumber the property.

The district court fined the defendant personally $25,000, following civil contempt proceedings. The court found that the defendant had practiced a fraud on the court by attempting to deprive the court of jurisdiction in contravention of the court's orders. As an additional sanction, the court required defendant to pay all of plaintiff's litigation costs, totaling $996,644.45.

In deciding the case on appeal, the Supreme Court reviewed the scope of the inherent powers of the federal courts. The Court stated:

> Because of their very potency, inherent powers must be exercised with restraint and discretion. *See Roadway Express [Inc. v. Piper]*, *supra*, 447 U.S. [752], at 764, 100 S.Ct. [2455], at 2463 [65 L.Ed.2d 488 (1980)]. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. As we recognized in *Roadway Express*, outright dismissal of a lawsuit, which we had upheld in *Link*, is a particularly severe sanction, yet is within the court's discretion. 447 U.S., at 765, 100 S.Ct., at 2463. Consequently, the "less severe sanction: of an assessment of attorney's fees is undoubtedly within the court's inherent power as well. *Ibid. See also Hutto v. Finney*, 437 U.S. 678, 689, n. 14, 98 S.Ct. 2565, 2573, n. 14, 57 L.ED.2d 522 (1978).

—— U.S. at ——, 111 S.Ct. at 2132–33 (citations omitted).

In *Marrocco v. General Motors Corp.*, 966 F.2d 220, 225 (7th Cir.1992), the Court affirmed the district court's sanction of dismissal of a plaintiff's action based upon the plaintiff's destruction of evidence in violation of a protective order, and, affirmed another court's directed verdict in favor of a plaintiff where the defendant destroyed evidence in derogation of a protective order. In so doing, the Seventh Circuit cited *National Hockey League v. Metropolitan Hockey Club, Inc., supra*, for the proposition that *fault* alone, distinct from a finding of bad faith or willfulness in the disregard of an obligation to comply with a protective order, will suffice to warrant sanctions. The Court stated: " 'Fault,' by contrast, doesn't speak to the noncomplying party's disposition at all, but rather only describes the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation." *Marrocco*, 966 F.2d at 224.

However, in *Ray S. Scharer and Co. v. Plabell Rubber Products*, 858 F.2d 317 (6th Cir.1988), the Sixth Circuit set aside the district court's assessment of sanctions and an award of attorney fees against a plaintiff who effectively caused a retrial of his case due to prior inconsistent testimony. The Court concluded that "the district court in this case made no definitive finding of 'bad faith' or 'conduct tantamount to bad faith' with respect to plaintiff. Characterization of [the plaintiff's inconsistent deposition testimony] as being a 'mistake' simply does not meet the requirements for sanctions." *Id.* at 321–22. Thus, the Sixth Circuit implied a finding of bad faith or "conduct tantamount to bad faith" on the part of attorneys or litigants in order to sanction them under the federal court's inherent powers.

*C. Rule 41(b) Dismissal.*

Rule 41(b) permits dismissal of an action for failure to prosecute or failure to "comply with these rules or any order of court." It has been utilized in the Sixth Circuit "as a substitute for and as a supplementary basis for sanctions under Rule 37(d) at least as to an aggrieved defendant who moves for such relief." *See:* Melissa L. Nelken, Sanctions: Rule 11 and Other Powers, 1992 A.B.A. Section of Litigation 143 (1992).

## ANALYSIS

In reversing and remanding the protective orders forbidding plaintiffs from using the donor's name to sue the donor in a separate action, the Sixth Circuit Court of Appeals did not imply that plaintiffs' and counsel's actions were insignificant or did not warrant sanctions. Rather, the Court focused on the plaintiffs' right to bring suit against the donor as against the competing stated interests of the defendants: a safe and adequate volunteer blood supply and the donor's privacy interest. The Court stated that "[w]hen a party violates a protective order, a district court may impose other sanctions to remedy the violation. Thus, a district court ... may impose other sanctions, such as contempt citations. In some cases, even a default judgment may be appropriate." *Coleman,* 979 F.2d at 1141.

Defendants have filed a motion for dismissal as a sanction pursuant to Fed. R.Civ.P. 41(b), arguing that the plaintiffs' egregious conduct warrants this extraordinary sanction. Plaintiffs state that a Rule 37 analysis should be employed rather than Rule 41 or the court's inherent power. Plaintiffs cite *Societe Internationale, Etc. v. Rogers, supra,* as the authority for this proposition. The Court stated:

> In our opinion, whether a court has power to dismiss a complaint because of noncompliance with a production order depends exclusively upon Rule 37, which addresses itself with particularity to the consequences of a failure to make discovery by listing a variety of remedies which a court may employ as well as by authorizing any order which is "just." There is no need to resort to Rule 41(b), which appears in that part of the rules concerned with trials and which lacks such specific references to discovery. Further, that Rule is on its face appropriate only as a defendant's remedy, while Rule 37 provides more expansive coverage by comprehending disobedience of production orders by any party. Reliance upon Rule 41, which can not easily be interpreted to afford a court more expansive powers than does Rule 37, or upon "inherent power," can only obscure analysis of the problem before us.

*Id.*

Defendants also point to the court's inherent power as a source of the authority to dismiss plaintiffs' cause of action, citing *Reid v. Prentice–Hall,* 261 F.2d 700, 701 (6th Cir.1958). In *Reid,* the Sixth Circuit Court of Appeals affirmed the district court's order of dismissal for failure to comply with its order to accept defendant's tender of performance under a settlement and compromise agreement. In *Reid,* the Court held: "[E]very litigant has the duty to comply with reasonable orders of the court" and, if such compliance is not forthcoming, the court has the power to apply the penalty of dismissal.

Defendants emphasize subsequent holdings of the United States Supreme Court which have confirmed and strengthened earlier Circuit Court opinions upholding courts' inherent powers to sanction those who disregard the need to respect the integrity of the judicial process. *See Roadway Express, Inc.,* supra. They emphasize the need to deter others from the violation of court orders. *See National Hockey League,* supra.

Defendants argue that the four factors to be analyzed to determine whether dismissal is an appropriate sanction are met in this case. The factors argued by both defendants and plaintiffs, while derived from different cases and rules, are essentially the same. The four factors will be set forth and analyzed as a Rule 37 motion.

### A.   Prejudice to the Defendants.

■ First, defendants argue that they have been substantially prejudiced by plaintiffs' conduct. They point to the dramatic drop in blood donations since publicity about the issue has increased and attribute the decrease to potential donors' fear of becoming targets for legal suits. Defendants provide an affidavit of Dr. A. William Shafer, medical director of the Southeastern Michigan Region of the American Red Cross. Dr. Shafer opines that the 13 percent drop in blood collections after a Detroit Free Press article entitled "Pair Can Sue Donor of AIDS Blood," from the same period in 1991 is at least partly a result of donor reluctance based upon the article.

Plaintiffs counter this argument with an affidavit from Dr. Elmo Allen Griggs.[4] Dr. Griggs testifies that without a scientifically controlled study of blood donation patterns, any conclusion as to the reason for a decrease in donations is hypothetical. Thus, plaintiffs argue, defendants cannot prove that they have been prejudiced by plaintiffs' actions.

Plaintiffs' argument that further study is needed to ascertain the exact cause or causes for the drop in blood donations has merit. However, this conclusion is not nec-

essary to show prejudice to the defendants. The March, 1990, protective order was based upon specific findings that there could be harm to the blood supply if the donor's identity became known to the public. Plaintiffs now seek to compel defendants to prove that the basis of the court's original order was not in error when the order itself has been affirmed by the Sixth Circuit Court of Appeals.

Defendants were prejudiced by plaintiffs' violation because they complied with the court's order to produce the donor registration cards and did so relying on the court's order to protect documents which they had objected to producing in the first place. Plaintiffs' violation went to the very heart of the protective order: the perceived need to protect the privacy of the implicated donor and the Southeastern Michigan blood supply. In this case, defendants' interest in these needs has been severely prejudiced. Further, any party who has complied with a court order to produce necessarily is prejudiced when another party abuses the judicial process to discover protected information. If the case against defendants is not dismissed, plaintiffs will benefit substantially from the deliberate violation by being able to bring suit against both defendants and the donor. This court can find no excuse or mitigating circumstances to explain the flagrant disregard of the court's order and the bad faith and egregious conduct exemplified by plaintiffs and their counsel. They have presented the court with an intolerable situation.

### B.   Warning of Possible Dismissal for Violation of the Order.

■ Another factor ·considered relevant in determining the appropriateness of a dismissal is whether the party was warned that failure to comply could result in dismissal. In this case, there was a published opinion describing the basis for issuing the protective order while still ordering defendants to produce the requested documents. Plaintiffs' assertion that they were not warned that the case might be dismissed is simply naive and disingenuous.

---

4.  Dr. Griggs is a licensed physician, board certified in anatomic and clinical pathology, and serves as a blood bank director at Morgan

County Memorial Hospital in Martinsville, Indiana.

Plaintiffs also quote two of the court's warnings made after the violation of the court's order and then state:

Since the above warnings, the only actions taken by [p]laintiffs have been two appeals to the Sixth Circuit Court of Appeals. There is no claim by [d]efendant that there has been any violation since the above warnings. Thus, rather than violating the district court's Protective Orders of 3/1/91 and 9/10/91 and starting a lawsuit against the implicated donor, [p]laintiffs pursued their appellate remedies.

Plaintiffs' last sentence of the above paragraph seems to indicate that they should be applauded for appealing the court's orders prohibiting them from suing the donor rather than sanctioned for violating the court's orders. However, it is the valid protective order that they violated. By the gravity of the subject matter, the very nature of that order was enough warning.

Further, the court could not have warned plaintiffs that violation of the March, 1990, protective order could result in dismissal. Plaintiffs assert that the purpose for the warning requirement before dismissal is to secure compliance with a court order. However, plaintiffs never gave the court any indication that a warning was necessary because they planned to ignore the protective order. Rather, counsel assured the court that plaintiffs had no intention of suing the donor. The carefully drafted protective order was agreed upon by all parties and its stated purpose was to accommodate plaintiffs' discovery needs while protecting defendants' stated interests. Once it was violated, there was no further warning the court could have given because compliance was forever impossible. Thus, the court concludes that ample warning was implicit that severe sanctions would be applicable if the protective order was violated and that a warning after disobedience of the order was an impossible means to ensure or coerce compliance with the March, 1990, order.

## C. The Parties' Blameworthiness.

■ Defendants do not claim that plaintiffs participated directly in the investigation which culminated in discovering the identity of the purported donor. Plaintiffs also point to their lack of participation in the violation. Defendants assert that plaintiffs' counsel's flagrant and deliberate violation is attributable to plaintiffs. In *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962), the Supreme Court rejected the argument that it is an unjust penalty on a party to dismiss a case based upon counsel's unexcused conduct:

Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can by charged upon the attorney."

*Id.*

Plaintiffs are not left without a remedy. They may seek recovery from their attorney in a lawsuit for malpractice based upon his inexcusable error in judgment. In *Link*, the Court stated:

[T]he client's remedy is against the attorney in a suit for malpractice ... keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of the plaintiff's lawyer upon the defendant.

370 U.S. at 634, 82 S.Ct. at 1390, n. 10.

## D. Consideration of Less Drastic Sanctions.

■ The court has considered sanctions less severe than dismissal. Defendants assert that no other sanction is appropriate given the egregious conduct of plaintiffs' counsel and the need to deter such behavior. *See National Hockey League*, 427 U.S. at 642, 96 S.Ct. at 2780.

Plaintiffs confuse their violation of the affirmed protective order with the remanded sanctions which prohibited them from suing the donor. They label defendants' motion for a dismissal as an "increase in sanctions" with an "odor of blatant vindictiveness." However, a dismissal would not

increase the prior ordered sanctions. Plaintiffs now have an opportunity to sue the donor if they can. Dismissing plaintiffs' case against the Red Cross is an appropriate alternative because violation of the protective order occurred in the context of plaintiffs' suit against these defendants. In this fact situation, this court finds that no other sanction would suffice to cure the harm to defendants. *See Goforth v. Owens,* 766 F.2d 1533, 1534 (11th Cir.1985).

## CONCLUSION

As previously explained in this opinion, if this type of flagrant violation of the court's orders is deemed acceptable, the integrity of the court's rules under which all attorneys and parties are governed would be a sham. The federal judiciary is required to deter blatant disregard for court orders.

For the above reasons,

IT IS ORDERED that plaintiffs' claims against defendants are DISMISSED with prejudice.*

---

* Paul Lentz, M.D. and Thomas J. Schnitzer, M.D. were voluntarily dismissed by plaintiffs on September 8, 1989. They have had no role in this case.