### The ESTATE OF Blaine E. HOYLE, Plaintiff,

v.

### AMERICAN RED CROSS, and Richard Roes I through V, Defendants.

### Civ. No. 90–C–1077G.

United States District Court, D. Utah, C.D.

March 26, 1993.

David D. Peck and Robert K. Beck, Idaho Falls, ID, for plaintiff.

Ronald D. Lee, Los Angeles, CA, Stephen B. Nebeker, Salt Lake City, UT, and Laurie Plessala, Los Angeles, CA, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the Court on February 12, 1993, on defendant American Red Cross' Motion for Protective Order. Defendant, American Red Cross ("ARC"), was represented by Ronald D. Lee, Stephen B. Nebeker and Laurie Plessala. Plaintiff, the estate of Blaine Hoyle, was represented by David D. Peck and Robert K. Beck. At the conclusion of oral argument, the Court took the motion under advisement. Now being fully advised, the Court issues its memorandum decision and order.

### I. FACTS

On May 9, 1984, Blaine Hoyle ("Hoyle") underwent coronary bypass surgery at Holy Cross Hospital ("Holy Cross"), and was transfused with several units of blood and blood components. Among these blood products was a unit of platelets numbered 44G63446, (the "unit.") The Salt Lake Region of the American Red Cross Blood Services ("ARC") collected this unit from a volunteer donor on May 8, 1984.

In 1986, the ARC learned that the donor of the unit had tested positive for the Human Immunodeficiency Virus ("HIV"). Upon the

---

**2.** Mr. Meier misspelled Mesesan and Hartin throughout his proposed amended complaint.

ARC's recommendation, Holy Cross notified Hoyle he should be tested for the presence of HIV antibodies. Hoyle tested positive in 1987, and subsequently died of Acquired Immune Deficiency Syndrome ("AIDS") in 1992. His estate alleges that the ARC is liable for Mr. Hoyle's contraction of AIDS based upon theories of negligence, strict liability, and breach of warranty.

On May 31, 1991, plaintiff filed a First Set of Interrogatories and Requests for Production of Documents. Along with other information, plaintiff requested the name and social security number of the donor of the transfused unit, all information relative to both the donor and the donation of the unit, and the names of other individuals in the Salt Lake area who were infected with the HIV virus as a result of a transfusion of blood or blood components supplied by the ARC during the years 1983 to 1986.

The ARC refused to supply the name and social security number of the donor, but agreed to provide other documentation requested, redacted of identifying information. As for the request for the names of other individuals infected with AIDS as a result of transfusions, the ARC objected to this interrogatory on the grounds that the request was not reasonably calculated to lead to the discovery of admissible evidence, was irrelevant to any issue in the case, and violated transfusion recipients' rights of privacy. Thereafter, plaintiff limited the request to information relating to the donor.[1]

Plaintiff moved the Court for an Order Compelling Discovery on January 2, 1992. The matter was referred to the Magistrate, and on March 2, 1992, the motion was granted. Pursuant to the Magistrate's Order, defendant submitted certain ARC policies and procedures to plaintiff, along with redacted documents concerning the donor and the donation.

On November 16, 1992, plaintiff's counsel notified the ARC that plaintiff still required disclosure of the donor's identity, and believed that the Magistrate's Order authorized this request, although the matter was not specifically addressed by the Magistrate. In response, the ARC moved this court for the protective order that is the subject of this memorandum decision and order.

## II. ANALYSIS

■ Pursuant to Federal Rule of Civil Procedure 26(b)(1), discovery may be permitted of any matter not privileged that is relevant to the subject matter of the action. However, the court may limit or bar discovery where good cause is shown to "protect . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R.Civ.P. 26(c). In determining the need for a protective order, the court must balance the interests of the plaintiff in having the information, and the interests of the defendant or society in keeping that information confidential.

■ Plaintiff claims that access to the donor is essential in this case because that is the "only available means that [plaintiff has] to independently confirm whether ARC followed donor screening procedures in the case. . . ." Pl.'s Mem.Opp'n Def.'s Mot. Protective Order at 3. In addition, plaintiff would like to inquire into "any high risk activities which donor engaged in prior to the donation in question in order to determine whether or not this should have been discovered prior to taking the donation by ARC, or could have been discovered through the formulation of a more reasonable donor screening procedure by ARC." *Id.*

The ARC argues that plaintiff already has access to all of the information required: the redacted donor card, donor screening procedures, and redacted testing results relating to the transfused unit. Further, under the facts of this case, release of the identity of the donor is unlikely to result in the discovery of admissible evidence. Defendant notes that the donation occurred over nine years ago, and that, assuming the donor is still living, it is highly unlikely that the donor remembers details concerning the donation. If the donor is not alive, the ARC contends

---

1. At oral argument, counsel for plaintiff withdrew other discovery requests. The Court therefore limits its analysis to the single issue of whether plaintiff may have discovery of the name of the blood donor.

that plaintiff may resort to questioning the donor's family about the blood donation nine years ago, as well as the donor's personal life during that time period.

Balanced against the slight chance of obtaining admissible evidence from the donor or his family, the ARC further asserts that releasing the donor's name will lead to a significant decline in the willingness of volunteers both to donate blood, and to participate honestly in "lookback"[2] investigations. As a result, the future safety of individuals in need of blood and blood products allegedly will be seriously jeopardized.[3] In further support of this contention, the ARC submitted numerous affidavits as well as citing several court decisions[4] and a recent study by H. David Banks, Ph.D. on the decreased willingness of volunteers to donate blood in the absence of confidentiality protections. Among other things, a finding contained within the study is that 18.1% of the donors questioned would be less willing to donate if the Red Cross' current confidentiality policy were not in place, and that 10% were either not sure or disagreed that they would be willing to donate again if the Red Cross' current confidentiality policy were not in place.

It is not necessary to determine whether the nation's blood supply would be endangered by permitting disclosure of volunteer blood donors' names. Under the facts of this case, disclosure of the donor's name is outweighed by the donor's right to privacy. Although the constitutional dimensions of an individual's right to privacy are not reached here, the strong interest against intrusion into one's private life is manifest. In this regard, the United States District Court for the District of South Carolina addressed the problem thusly:

> Avoiding the constitutional argument, the probing by strangers into personal areas of one's life is certainly an invasion of privacy entitled to serious consideration. ... This is especially true where, as here, the donor is suffering from a disease that is widely thought of as the modern day equivalent of leprosy.... Therefore, it cannot be doubted that this donor has a strong interest in avoiding the intrusion of litigants into his private life.

*Doe v. American Red Cross,* 125 F.R.D. 646, 652 (D.S.C.1989) (citations omitted).

For the foregoing reasons, Defendant's Motion for Protective Order relative to disclosure of the identity of the donor is GRANTED.

---

**2.** A "lookback" investigation takes place after a blood donor has tested positive for AIDS. The blood bank destroys whatever blood has been donated by the donor, contacts the donor to request that he or she be tested again, questions the donor about possible high risk activity, and searches for prior recipients of the donor's blood, if any.

**3.** The ARC also alleges statutory and constitutional bases for its objection to releasing the donor's name. The Court finds it unnecessary to reach these claims because the interests involved here are adequately protected by the Federal Rules of Civil Procedure.

**4.** The ARC claims that the majority of courts faced with the issue of disclosure of the donor's name have granted a protective order: *Bradway v. American National Red Cross,* 132 F.R.D. 78, 79 (N.D.Ga.1990) ("[T]he Court agrees with defendant that it is not possible to reveal donor identities without undermining Red Cross efforts to maintain an adequate and safe blood supply in the United States."); *Coleman v. American Red Cross,* 130 F.R.D. 360, 362 (E.D.Mich.1990) ("There is no question that court ordered disclosure of donor's identities will have a serious impact on volunteer blood donations."); *Doe v. American Red Cross,* 125 F.R.D. 646, 653 (D.S.C. 1989) ("Courts have had no trouble recognizing that the prospect of inquiry into one's personal life, medical history, and potential association with infectious diseases such as AIDS is the kind of disincentive that could have a serious impact on the nation's supply of voluntary blood.")