Arthur ELLISON

v.

AMERICAN NATIONAL RED CROSS.

Civ. No. 92-364-SD.

United States District Court,
D. New Hampshire.

Sept. 8, 1993.

Gary B. Richardson, Concord, NH, for plaintiff.

Irvin D. Gordon, Concord, NH, Bruce M. Chadwick, Washington, DC, for defendant.

## ORDER

DEVINE, Senior District Judge.

In this action, plaintiff Arthur Ellison, individually and as executor of the estate of his deceased wife Susan Gladstone, alleges, inter alia, that defendant American National Red Cross (ARC) is liable for Ms. Gladstone's death because it failed to exercise reasonable care in screening the donor of the blood used during a transfusion which resulted in her infection with the human immunodeficiency virus (HIV). Presently before the court is plaintiff's motion for reconsideration of the magistrate judge's May 24, 1993, order denying plaintiff's March 22, 1993, motions to compel production of documents and to compel answers to interrogatories which sought discovery of the identity of the donor of the blood used in the transfusion.[1]

In his order, the magistrate judge found "that the benefit of giving the identity of the donor to the plaintiff does not outweigh the harsh effect that disclosure may have on the donor's expected right of privacy or the ARC blood program." Magistrate Judge's Order at 9.

The court construes plaintiff's motion as seeking relief pursuant to 28 U.S.C. § 636(b)(1)(A), which provides,

(b)(1) Notwithstanding any provision of law to the contrary—

(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. *A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.*[2]

(Emphasis added.)

"A magistrate's discovery order may be set aside where the order is clearly erroneous or contrary to law. *Fischer v. McGowan,* 585 F.Supp. 978, 984 (D.R.I.1984); *Pascale v. G.D. Searle & Co.,* 90 F.R.D. 55, 59 (D.R.I. 1981); 28 U.S.C. § 636(b)(1)(A)." *United States v. Garcia,* 983 F.2d 1160, 1166 (1st Cir.1993).

 With respect to the discovery issue in question, the legal standard governing the magistrate judge, as designee of the court pursuant to section 636(b)(1)(A), is provided at Rule 26(b)(1)(iii), Fed.R.Civ.P., which states,

The frequency or extent of use of the discovery methods set forth in subdivision (a)[3] shall be limited by the court if it determines that: ... (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

Under Rule 26(b)(1)(iii), "[t]he court has discretion to balance the relevance of discovery against the burden of producing it." *Guru-*

---

1. The court notes that plaintiff's motion for reconsideration does not acknowledge that the magistrate judge issued said order, but instead ambiguously refers to "the Court's May 24, 1993, order."

2. The court notes that plaintiff erroneously seeks relief under Rule 60(b), Fed.R.Civ.P., which per-

tains to relief from "a final judgment, order, or proceeding."

3. Under Rule 26(a), "[p]arties may obtain discovery by one or more of the following methods: ... written interrogatories; production of documents...."

*waya v. Montgomery Ward, Inc.*, 119 F.R.D. 36, 39 (N.D.Cal.1988). Accordingly, the court concludes that under section 636(b)(1)(A) it may reconsider the magistrate judge's order only if the magistrate judge abused his discretion as provided under Rule 26(b)(1)(iii).

■ Plaintiff contends that [t]he May 24 Order should be reconsidered for three reasons: (1) a discovery Order can be fashioned that will have no impact whatsoever on future blood donations, (2) the Red Cross has failed to prove that disclosure of the donor's identity in this case will have any effect on the nation's supply of volunteer blood, and (3) the Plaintiff's need for a deposition of the donor is of preeminent importance in the balance of relevant competing interests.

Plaintiff's Memorandum in Support of Motion for Reconsideration at 1.

In reaching his finding, the magistrate judge cited, inter alia, the congressional testimony of former Food and Drug Administration (FDA) Commissioner Frank E. Young, M.D., Ph.D., who stated,

'Now I would like to go on to issues of confidentiality in the context of the collection, testing and use of blood and blood products.

These issues have not been as widely addressed in the context of blood banking as they have been in research. The blood and blood products community has had policies and procedures that called for confidential treatment of donor information, and there was little in the way of challenge to such policies. As a practical matter, before the AIDS issue, there was not much interest in obtaining information about donors from blood banks.

The transmission of AIDS by blood transfusion, and related developments like use of the test for the HLTV–III antibody to screen all donated blood and plasma, have focused attention in this area. These developments have precipitated debate about the ethics of disclosure of the results of tests and of other blood donor information. Transfusion of blood contaminated with HLTV–III virus presents a public health problem, and knowledge of who donated blood, and who received that blood, and the health status of each, have become important to epidemiologic and clinical research and to public health and safety.

Furthermore, the availability of screening tests has caused some to view blood banks as sources of information about individuals. For example, litigation in Florida seeks the names of donors in an effort to contact the donors and establish some possible correlation between the donors and onset of AIDS that caused the eventual death of a transfusion recipient. There are other reports of requests for such information from blood banks.

While there are many difficult issues to balance here, I want to make one basic point about confidentiality. Use of donor information outside of the blood and plasma resource community has the potential for interfering with the supply of blood and blood products. We are dependent for a large portion of our blood supply on the generosity and good intentions of the American public in donating their blood voluntarily. Understandably, people will be hesitant about coming forward to donate blood if that generous action offers the possibility that private information about them will be revealed outside the blood community, or the possibility that they will be questioned later about the details of their health and lives, or the possibility of being named in lawsuits.'

Magistrate Judge's Order at 7–8 (quoting *Protection of Confidentiality of Records of Research Subjects and Blood Donors: Hearings on AIDS Issues Before the Subcommittee on Health and Environment*, 99th Cong., 1st Sess. (1985) (statement of Frank E. Young, M.D., Ph.D.), submitted as Exhibit 5 of Exhibits Filed in Support of ARC's Opposition to Plaintiff's Motion to Compel Disclosure of Donor Identity Through Answers to Interrogatories and Document Requests).

In light of the foregoing, the court concludes that the magistrate judge did not abuse his discretion by taking into account "the harsh effect that disclosure may have on ... the ARC blood program."

In his Memorandum in Support of Motion to Compel, Ellison argues,

It does not require extensive discussion to show the importance to Arthur Ellison of learning the identity of the implicated donor. The essence of the case against the Red Cross is that the screening procedures actually used at the time were inadequate; without knowing what precise procedures were used it will be impossible to fairly prosecute this claim. Apparently, only two people know precisely what questions were asked when the donor donated the implicated unit of blood: the donor himself and the nurse who conducted the interview. It is important that Arthur Ellison have an opportunity to conduct discovery with regard to both individuals.

Plaintiff's Memorandum at 21. Further, in Plaintiff's Reply Brief Regarding Disclosure of Donor's Identity, Ellison argues,

[W]ithout the ability to contact the donor, it will be virtually impossible for Mr. Ellison to sustain his case.

As explained in detail in the memorandum filed with plaintiff's Motion to Compel, this negligence action challenges the screening procedures used by the Red Cross. Without an opportunity to ask the donor how he would have responded had the Red Cross followed proper screening procedures it will be virtually impossible for the plaintiff to prove that the Red Cross' negligence was the proximate cause of Susan Gladstone's death.

Undoubtedly, the Red Cross will offer its staff for deposition to respond to these questions. However, it is probable that the particular health historians will not remember the specific questions asked nor the donor's response. The Red Cross collects hundreds of thousands of units of blood each year. The chance that the health history interviewer, nurse, and venipuncturist will remember processing the donor of unit # 34H59481 is small. The donor, however, is more likely to remember the events which took place on February 13, 1985. In addition, if Red Cross is

allowed to present testimony of the events which took place during the screening of the implicated donor, Arthur Ellison should have an equal opportunity to contradict that evidence. The only source available to test the credibility of the Red Cross is the donor.

Plaintiff's Reply Brief at 3–4.

In balancing Arthur Ellison's purported interest in obtaining the discovery he seeks versus the public interest in protecting the nation's blood supply, the court finds that the magistrate judge did not abuse his discretion in finding that, under the circumstances of the instant case, the public interest should prevail.[4] *Accord Coleman v. American Red Cross,* 979 F.2d 1135, 1139 (6th Cir.1992), *affirming* 130 F.R.D. 360 (E.D.Mich.1990); *Bradway v. American Nat'l Red Cross,* 132 F.R.D. 78, 80 (N.D.Ga.1990). Accordingly, plaintiff's motion for reconsideration is herewith denied.

SO ORDERED.

---

**4.** Because the court finds said public interest to be a sufficient basis for the magistrate judge's finding, it does not address the magistrate judge's concerns as to "the harsh effect that disclosure may have on the donor's expected right of privacy."